Good morning, we're very pleased this morning to have with us Judge Marilyn Huff from the District Court, the United States District Court in the Southern District of California who is sitting by designation of the Chief Justice and we appreciate her coming all this way to give us a hand. The first case this morning, 08-1003, Cordis Corporation v. Boston Scientific. Mr. Stanton. Thank you. May it please the Court, my name is Greg Discan on behalf of Cordis. In this case, Cordis' BX Velocity stent was found to infringe the Jang patent, notwithstanding the fact that Cordis practices two elements of the prior art that Jang disclaimed. One of those is these expansion columns, all stents have expansion columns. Cordises are 180 degrees out of phase, they're mirror images of each other, not the offset connectors that Jang preferred. And secondly, Cordis connects its expansion struts with these circular arcs, not by using joining struts and corners, which is the choice that Jang made. For those reasons, as I'll demonstrate, the infringement verdict was wrong. If the infringement verdict was right, however, and Jang's patent covers such a design, then it's invalid over the prior art. Your contention is that this 180 degree out of phase design was disclaimed in the prosecution? That's correct. I don't see any reference to that terminology in the prosecution history, but I do see something that might be a disclaimer. But I must say I'm very confused by it, maybe you can help me. It's on 1722 of the appendix, and this is the remarks section that the patentee submitted, distinguishing the earlier Pezenek patent. And I'm at a loss to understand how this statement distinguishes the Pezenek patent, that's my problem. The additionally language there? Yes. Unfortunately, as in everything with this patent, it requires some work to work through the language. But the sentence says, additionally the stent, meaning the stent of the invention, has a first expansion strut of a first expansion strut pair in the first expansion column. Let me pause there for a moment. In the language of claim one, which is what Jang was using. Let's look at the Pezenek drawing, which I think is reproduced on page 68 of the red brief. This is the examiner's. Tell me how that language distinguishes the Pezenek patent. On the left you see the, and I don't believe this is on 68, I'm sorry, I'm on the wrong page. What the examiner has colored are expansion struts in red. And what, in the language of claim one, the first pair, and I'll just use these not because they're the same but because they just allow me to point. This is the first pair, so the first strut and a second strut in the first expansion pair. And then there's, this is also a first pair and this is a first pair. All the pairs in the first column are first expansion pairs. They each have a first strut and a second strut. The examiner has colored that. In the column on the right, he's done the same thing. He's colored. In the right-hand column, in the second column, all the struts are called second expansion strut pairs. Second, second, second. Each has a first. That terminology is confusing to me. I thought that the idea was that there was a first pair in the first column, a second pair in the second column. That's correct. There is a second. I thought each pair in each column was numbered, so you'd have a first, second, third pair in the first column, first, second, third pair in the second. It's critical understanding. I understand what you're saying, but how do I know that that's right? You have to read claim one. And what claim one says, can I have claim one, somebody? Read claim one, which is on A-1509. It talks about the first expansion strut, the stent comprising. Then there's a first paragraph describes the first column. The second paragraph describes the second column. First paragraph is the first expansion strut pair, including a first expansion strut positioned adjacent to a second expansion strut and a joining strut. Now that's describing one pair that's joined together. First strut next to a second strut and a joining strut. But then the last phrase of the first paragraph says, a plurality of the first expansion strut pair forming a first expansion column. So the first expansion column consists of a plurality of first pairs. The same language appears in the next paragraph. The second expansion strut pair, which has a first strut and a second strut. The plurality of the second expansion strut pair forming a second expansion column. But on page 40 of the blue brief you show, with respect to claim 23, the numbering system that I thought was applicable. There's a first, second, third, and fourth pair. That would be the numbering system for claim 23. So there's two different numbering systems. That's the problem. That is the huge problem that makes the where in clause indefinite in claim 23 when you apply exactly the same language. Yeah, the illustration on page 40 of the blue book makes the point pretty clearly. On the left, on the top, you see the first expansion column composed only of first pairs and the second expansion column composed only of second pairs. So when the where in clause was drafted on claim 1, its effect was to say, first pair, first pair, first pair, second pair, second pair, second pair. The first strut of the first pair is offset from the first strut of the second pair. And that requires disorientation. It requires any orientation other than 180 degree out of phase orientation because that's when the struts are aligned. Could you reconcile it by saying each one has a different numbering system to begin with, claim 1 and claim 23, so that under the ordinary meaning of the language that when you added the where in clause, you were talking about the broad construct, not necessarily talking about that particular numbering scheme because you started with two different numbering schemes? I think that's the clue to the right way of construing the patent because I think that the where in clause makes no sense in the context of claim 23. In the context of claim 23, it talks about an offset of a first strut of a second pair. There isn't the first strut of a second pair. So how do you solve it? To me, there are two ways to solve it. One is to go back to the prosecution history, see what was going on, to see that when the patentee explained this problem to the examiner, he only used the language of claim 1 in describing the solution, but he made it applicable to both claims. And if you do that, then you construe claim 23 just like claim 1 to require offsets and to exclude 180-degree out-of-phase designs because the offset connector, the offset between the first strut of the adjacent pairs is what's required by the where in clause. The offset is what precludes the 180-degree out-of-phase design. The only other alternative besides harmonizing the where in clause with the prosecution history is to throw up your hands and say it doesn't work. He's added a where in clause that has no antecedent basis. In claim 23, it's insolubly ambiguous and should be vacated. You've set aside most of your time for rebuttal and you've used more of it. Do you want to assume you had a reason to do that? I had better reserve my time and continue the dialogue. Thank you. Mr. Desmarais. Thank you, Your Honor. May it please the court. My name is John Desmarais. I'm here for Boston Scientific. To pick up on Your Honor's question and Your Honor's insight, I think the fundamental problem with court is this position in this case is they admit that the numbering scheme in claim 1 and the numbering scheme in claim 23 are different. When they show on page 40 of the blue brief this numbering according to claim 1 and according to claim 23, is that correct? Do you agree that that's a correct numbering? Yes, Mr. Desmarais described the numbering of claim 1 correctly. Specifically on page 40, these two figures here, the numbering and the two figures, is that correct? Yes, Your Honor. I would say that that's correct. You can see the issue if you look on page 64 of Cordes' opening brief where they show the, excuse me, page 64 of Boston Scientific's brief where we show the numbering of the stent according to claim 23. You'll see that the numbering is different when you use claim 23's scheme versus when you use claim 1's scheme. What Cordes' position here is, is they want to take plain and simple words in claim 23 and add in a meaning that comes from nowhere. This 180 degree offset is nowhere in the patent, it's nowhere in the claim, just nowhere in the prosecution history and they're trying to force it into the claim. But when you read the plain words of claim 23, it's perfectly clear what it's saying. What it's saying is, and you can see this on page 64, that the expansion struts are offset in the structure. It doesn't mean the slots are offset. There's a difference in this prosecution history and it's one of the things that Cordes ignores. There's a difference in the prosecution history between the slots being offset and the struts being offset. I don't understand what he means, what's a slot? The slots are the openings that is made in between the struts. Those are called loop slots in the patent specification and you can see that there's a difference. If you look in the prosecution history on A1730, where the patent office was talking about the double patenting rejection, the patent office characterizes the second patent that the rejection was made over as having two features, collinear or non-collinear loop slots, which are those slots made by the struts. I'm confused, I don't understand, because the distinction here doesn't distinguish based on slots, it distinguishes based on the longitudinal relationship of the struts. Exactly the point I'm making, Your Honor, which is the claim talks about the struts being not longitudinally aligned, but there are two different concepts in the patent. One is the struts not being aligned as you label them. So if you look on page 64 of our brief... I'm not following this. You've got language there to the examiner which says, we're going to include a where-in clause to distinguish pysenic, and it doesn't say anything about slots, it says about the strut orientation. Exactly. Does that comment to the examiner in fact distinguish pysenic? That's the problem that I had in reading this. Yes, and the point I'm making is the same point you're making, which is I agree with you that the language in the claim is talking about offset struts. Cordes is trying to read that as offset slots, and that's not what the claim is getting at. So I'm agreeing with you, Your Honor. In claim 1, the numbering scheme has offset struts, and in claim 23 it has offset struts, but they're different struts because the numbering scheme is different. And you can see that, as I said on page 64 of our brief, because the first expansive strut and the first expansive strut in the two different columns are offset in the numbering scheme of claim 23, which makes perfect sense with the claim, with the specification, with the file history. What Cordes is trying to do is say the claim, although it's saying offset struts, it really means offset slots or openings or those spaces, and that's not what the claim is getting at. And that's why I was referring, if you look at the prosecution history on the double patenting rejection, the patent examiner makes a distinction between offset slots and offset struts, and he says those are two different concepts in the patents. You can see that, as I said, on A1730. So what Cordes is trying to do is they're taking this concept of 180-degree offsets, which appears nowhere in the patent specification, nowhere in the claims, and nowhere in the prosecution history. Even on the page they cite, that language that Your Honor is referring to where the applicant characterizes the invention, he's just repeating the claim language. He's not saying anything to characterize it about 180-degree offset. So I don't see how the judge's plain meaning construction can be interpreted as requiring a 180-degree offset. But isn't her construction sort of confusing? She says the first expansion strut in the first column does not share a longitudinal axis with the second expansion strut in the second column. But that's not what the claim language says. It's what the claim language says when you look at the numbering scheme of Claim 23. The numbering scheme of Claim 23 has expansion strut pairs, and it clearly tells you which struts are in which pair. What she's saying is that the second expansion strut in the second column is the first strut of the second pair. Exactly. And frankly, when you read the claim, that's the plain, clear meaning of those words. I know it's a complicated claim, but when you read it, that is the plain language. So what the judge did is interpreted the claim according to the plain language as it's written in the claim. What Cordes wants to do is take that. Their proposed construction below was, quote, this claim language excludes stents that have 180 degrees out-of-phase rings, close quote. That was their proposed construction. It's not even a construction of those words. It's an exclusionary construction, which this court's case law says is an inappropriate way to go about construing plain language. How does this language distinguish Pezenek? It distinguished it in two different ways in the two different claims. In Claim 1, it distinguishes it because it says you've got to have certain of the pairs offset. I don't know what the claim – if you look at the drawing of Pezenek and you take the where-in clause, how does the where-in clause apply to Pezenek? How is it that in Pezenek that they're not longitudinally aligned? This is the point I was making about the numbering scheme. It depends on how you number the struts. And in Claim 23, the numbering of the struts starts from different angles. So even in the prior art, you would number them differently and they would be offset. Are you going to want to talk about your cross appeal? I do, Your Honor. Thank you. Let me start briefly with the gray patent, the 406 patent. And I'll start with the construction of the term continuous wave. In this court's decision in 02 micro, the court made clear that if the parties dispute a claim term, the district court has a duty to resolve the term. Both parties in this case disputed continuous wave. We proposed that continuous wave be a wave form that uniformly progresses through the medium. Court has proposed that it had to have certain crest and trough attributes between different lengths. The district court did not resolve that conflict. In fact, didn't construe continuous wave at all and just repeated continuous wave to the jury in the jury instructions. Compounding that error of not construing the term as it was the court's duty to do, the court then let the parties present to the jury the disputed claim term. So we presented to the jury the prosecution disclaimer arguments. We showed the prosecution history. We presented what a wave means in physics, what a wave means to be serpentine. Court has presented an ocean wave, a breaking wave. Court has presented their crest and trough.  The problem with doing that in this case, not only for the reasons in O2 micro, which said the court has a duty to resolve that, but here it was more particularly troubling because wave is a common everyday term that the jurors, when they came into court, probably had their own preconceived notions of what a wave meant. And court has played on that during the trial, which created a lot of prejudice for Boston Scientific. Court has showed a demonstrative of a breaking surfing wave in Hawaii. They colored in the stent. They colored the metal in the airspace, making an undulating wave appearance, which was not really part of the sentence. So they're playing into the jury's preconceived notion of what that common word means. But if you look at the way the word is used in the patent specification, in the claims and in the prosecution history, it's used in the mathematical sense. Those breaking waves, that surfer wave that court has showed as part of their demonstrative, is not a wave in the sense of the patent. The patent talks about a continuous longitudinal wave with a spatial frequency. That breaking wave isn't even such a wave. An ocean wave is what comes before the break, and the break is at the end. So they've taken a term that the jury may have had their own preconceived notion of. They played into that preconceived notion and created an outcome that is, frankly, very different from what the patent is. If you look at what's in the Liberté stent, the band that they're saying is a continuous wave goes up, bends around, goes back, goes down, loops around, and then continues on in that pattern. It's not a wave by anyone's definition, and it's certainly a breaking wave. It's not a wave. Is this the only part of your cross-appeal you want to talk about? No, Your Honor. Thank you. We have a limited amount of time. Yeah, of course, Your Honor. Let me move on then to one quick issue on the Liberté stent, which is the Taxus Liberté was a separate accused product in the trial. Taxus Liberté went through the trial, was in a pretrial order, was tried. At the end of the case, court has put in no proof on infringement of Taxus Liberté, and we move for Jamal. The court dismissed on jurisdictional grounds saying there was no subject matter jurisdiction because court has didn't prove that Taxus Liberté was made, used, or sold in the United States. Under this court's decision in Light Cubes and Light Products, whether you prove that the product is made, used, or sold in the United States is not a matter of subject matter jurisdiction. It's a matter of the merits that Jamal should have been granted and that Taxus Liberté should have been dismissed from the case with prejudice. That was clear and plain error and should be reversed. The last point I want to make on the opening appeal, and I know I'm in my rebuttal time, so I'll be brief. The district court also committed two plain errors on the PAMAS patent relating to whether the prior art monographs were, in fact, disseminated. The two quick errors were, one, applying issue preclusion where there was no issue. What's the status of the re-exam with respect to those monographs? There's just been, I think we sent a letter in the court, there's just been a granted re-exam again for a new time, so we sent the monographs back in with information from the trial record showing that these things were in fact disseminated. But it's an issue that's still pending before the PTL. Yes, but it's an ex parte proceeding, so we will not get to be heard. So the two quick errors there is on the first set of claims where the court found issue preclusion because there had been an earlier trial on a different product where the monographs were not raised. So we have the second trial then on the express products, and the court found issue preclusion. Issue preclusion under the Third Circuit law requires the issue have been tried, actually tried in the prior proceeding. So we're talking about a second proceeding on a different product, on different art, and we got issue precluded when it wasn't even tried in the first case. That's a clear error of law. It's applying Blondertongue in the reverse. Blondertongue says if you lose on validity, you don't get to retry validity. It doesn't say if you win on validity, your patent stays valid going forward. In fact, it's axiomatic that that's not how Blondertongue applies. On the second set of claims where the court didn't find issue preclusion because they weren't part of the first trial, the court granted summary judgment against Boston Scientific, but resolved the factual issues against Boston Scientific in the summary judgment. You mean on the monographs? On the monographs. There were two critical pieces. So the collateral estoppel doesn't solve the whole problem. You still have to use the monographs. Exactly. There are six sets of claims. Only three were tried in the early trial. In the second trial, it was three additional ones that the court couldn't find collateral estoppel or issue preclusion on. But on those three, there was a factual dispute as to whether the disseminated publications were public. And there were two contracts, one with Shiley and one with Vasco, two companies that are in the business of making these products. Those contracts said plainly, and Cordes agrees with this, that the monographs would not be kept confidential and there was no duty not to share them or copy them. Dr. Palmaz, the inventor in self-serving testimony for trial, said, yeah, but I thought they were going to be confidential anyway. But that's only for 1980, not her 1980s. Yeah, I'm talking about the 1980 monograph, Your Honor. That's correct. So the district court credits Palmaz's, the inventor's, self-serving trial testimony over the written express contracts that he himself signed and said these things were confidential. That's in her order. And then summary judgment against Boston Scientific. That's the reverse of the standard. She should have credited the contracts over the self-serving testimony. The contracts didn't address the confidentiality issue, did they? Excuse me? Did the contracts address the confidentiality issue? Specifically, they said, we will not agree to keep these things confidential. We'll have no obligations to keep confidential. The contracts with Shiley and Vasco said the same thing. So the inventor's testimony was contrary to the express words of the contract. And if I might save a minute or two, what I have left for my response. Thank you, Your Honor. Mr. Schreiner. Thank you. Let me start with Vincasek because I think Judge Dyke asked the right question. I'm very confused because whatever numbering system is used in Claim 1 and Claim 23 don't apply to Vincesek. I mean, that patent has no numbering system. It has no numbering system, but you can apply the numbers using the patent and as a guide you can walk through Vincesek and give it numbers, which is exactly what the examiner did. Well, did he give it numbers? Yes, he did. You can't quite see them, but there are first struts and second struts. And the whole thing, let me see if I can get you a better copy of Vincesek. But I think Mr. Ramirez just agreed with something important, that the amendment in fact distinguishes over Vincesek. They've denied that previously. They've come up with bizarre explanations for what happened in the patent office, that the patent office suddenly had an epiphany and accepted the patent without regard to Vincesek. The reality is Vincesek was the stumbling block. The amendment does distinguish over Vincesek. I think as to Claim 1, there's never been a dispute that it does. The problem is as to Claim 23, as construed by the district court, and it's shown on page 44 of our blue book, for Claim 23 using its numbering system and the district court's claim construction, Claim 23 reads on Vincesek, and that's the problem. You agree that Claim 1 does not read on Vincesek? Yes, because of the wherein clause, Claim 1 does not read on Vincesek. That was the point of the amendment, and it works. And it works on Claim 23 if you give it the same meaning as in Claim 1. If you do what the district court does, you throw out the purpose of the amendment and make it self-defeating. It means that the amendment was for no purpose. So I think that's the wrong way to solve an internal ambiguity. Let me move past that. But if you gave it the same meaning, the wherein clause, the same meaning as it has in Claim 1, it would distinguish. It would. Yes. And I think that's the only sensible way to read this given the prosecution history in which both parties seem to treat the wherein clause as sufficient for both independent claims, and the examiner did, and so did Congress. Well, how does that help you if the wherein clause in Claim 23 is read the same way? If the wherein clause distinguishes over Vincesek, then it requires that the first strut in the second pair, all these would be second pairs, the first strut in the second pair of the expansion column be offset from the first strut in the first pair. All these would be first pairs. Because these aren't offset from each other, these are aligned, we can't infringe. Why does it require offset? Offset is the word in the wherein clause. The wherein clause says that the first strut in the second strut pair in the second column is offset from the longitudinal axis of the first strut in the first strut pair in the first column. Could I try to understand this? Sure. What you're saying is if you give the wherein clause in Claim 23, you read it using the numbering system of Claim 1, then it distinguishes Vincesek, but that if you use the numbering system in the wherein clause in Claim 23, it doesn't. Correct. So there's this kind of odd claim construction that you have to give the wherein clause the same meaning in both claims but use the numbering system of Claim 1 in Claim 23 just for the purposes of the wherein clause. Yes, I think that's the only way to make sense of this confusing history in light of, I would say, the clear intent of both the examiner and Jang to treat a single wherein clause as sufficient to address the problem as to both independent claims. Well, suppose we adopted that construction. How does that help you on infringement? It leads immediately to a judgment of non-infringement because using the terminology of Claim 1, this is the second pair in the second column. This is the first pair in the first column. The first strut of the second pair must be offset, longitudinally offset, from the first strut in the first pair. So these aren't. These are aligned, not offset. To be offset, you would have to have a Jang-like design where this strut would be offset from this strut. If you look at the pairs that are connected, here's a pair that's connected. This strut is offset from that strut. That's what the offset's doing in the wherein clause, and that's what makes this design different from this design. I don't think there's any dispute at trial that if the offset of Claim 1 was applicable, that BX Velocity would not infringe. On the cross-appeal, did you move for summary judgment on validity? No. How do you reconcile what the court did? I think what the court did was pretty straightforward. First, on Claim 23, it applied ordinary concepts of collateral estoppel, which we did move on, and granted collateral estoppel that the Boston Scientific was barred from relitigating the validity of Claim 23 based on the monographs when it already had two opportunities to litigate validity over the prior art. That was a standard application of collateral estoppel, and it was correct. The district court also denied Boston's motion for summary judgment on the monographs. And then I think it made perfectly clear that Boston had the right, if it chose, to try the monographs as to Claim 1. It says on A81, the validity of Claim 1, 9, and 12 are a different issue than that litigated in the other case. BSC is not precluded from asserting their invalidity consistent with the other pretrial decisions of the court. This is an invitation to try the validity of Claim 1. There was no sua sponde grant of summary judgment. Counsel had the instruction from the district court that they had the power to try validity of Claim 1. They waived it. Why did they waive it? Because it didn't make any sense to try validity on Claim 1 when they couldn't challenge Claim 23. It would have been a waste of trial time. So they made the wise, strategic choice not to try validity of Claim 1 when they couldn't challenge the validity of Claim 23. Now they are arguing that the district court sua sponde granted summary judgment when it didn't. And I think that's just unfair. It's unfair to the process. It's unfair to the litigants. We were in court trying to decide what case was being tried. They had the opportunity to try Claim 1. I would say at the worst, if they had any doubt, they had an obligation to go to the judge and find out. That sounds like a sufficient answer. Thank you. Thank you. Is my time up? Your time is more than up. More than up. In that case, I apologize. I thank the court for your time. Mr. DeMaris, a couple minutes. Of course, you're limited to the cross appeal. Yes, Your Honor. I'll just talk about the two issues that Mr. Descant just talked about. Picking up, Your Honor, on the last point, what the judge says at A78 is BSC's motion for summary judgment is denied as the PAMAS monographs are not prior art under Section 102B. There's another part of the memorandum of opinion that says certain claims are precluded and certain claims are not, but the court found that they were not prior art. Then if you look at the order on A85 in Paragraph 2, Cordes' motion for summary judgment that the asserted claims of the 762 patent are not invalid is granted as to the asserted claims being invalidated by the PAMAS monographs. That is a judicial order that we're not allowed to pursue validity on the monographs. That's what the district court found. There was no mistaking it below. So we were precluded. There were two sets of claims. Three of the claims were precluded on issue preclusion. Three of them were denied on summary judgment, but then the order said you can't raise the monographs as a validity issue at all. And the issue preclusion there, it is not a question of collateral estoppel. It's a question of issue preclusion. And under Third Circuit law, which is what applies, the standard says the issue has to be- There's no difference between issue preclusion and collateral estoppel. It's the same thing. The collateral estoppel will stop the claim. I'm talking about the difference between precluding a claim versus precluding an issue that wasn't- This is an issue of- Issue preclusion is the issue of the monographs being prior art precluded. Under Third Circuit law, it says the issue has to have actually been tried. It's right in the standard. This issue of the monographs being prior art was not tried. We can't be issue precluded. Remember, this is a second action. This is not the first action. It's a separate product. It's separate art, separate issues. Validity is a defense and is allowed to be tried under Third Circuit law. Just one quick point on the wearing clause. What court is trying to do is take the numbering of the Claim 1 and force it into Claim 23 where it doesn't belong. The issue here for infringement and validity is what does Claim 36, which depends on 23, what does that mean in the words that are there? And the court's construction of the plain words in that claim was a plain meaning construction. And it's clear from the plain meaning what they mean. What court is would like to do is take… This is not the cross appeal, is it? I'm commenting on what Mr. Diskant talked about just now. It's the main appeal. Yes, it's an issue in the main appeal. Then your time has expired. Thank you. Thank you.